IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILMA HILLS,

          Plaintiff,

vs.                             Case No. 09-1387-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On June 12, 2008, administrative law judge (ALJ) William H. Rima issued his decision (R. at 14-27). Plaintiff alleges that she has been disabled since July 23, 2005 (R. at 14). Plaintiff is insured for disability insurance benefits through December 31, 2007 (R. at 16). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 16). At step two, the ALJ found that plaintiff had the following severe impairments:

fibromyalgia, asthma, bilateral carpal tunnel syndrome, and obesity (R. at 17). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19). After determining plaintiff's RFC (R. at 20), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 26). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 26). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 26).

**III. Did the ALJ err in his consideration of the medical opinions of Dr. Goodman?**

On February 7, 2003, Dr. Goodman performed a mental status examination on the plaintiff. His findings were as follows:

> She should be able intellectually to follow simple oral instructions and carry out instructions under ordinary supervision. She should be able intellectually to relate appropriately to coworkers and supervisors, meet quality standards and production norms and sustain work with adequate attendance <u>providing that she work in a low stress familiar situation</u>.

(R. at 180, emphasis added). The ALJ's discussion of the report of Dr. Goodman was as follows:

> She was referred by the Social Security Administration in February, 2003 to Mark D. Goodman, Ph.D., for a mental status evaluation. The claimant reported panic attacks in unfamiliar places and alleged a diagnosis of agoraphobia, but denied feeling depressed. She stated that she was outgoing

5

> and had a large circle of friends, whom she
> visited regularly. Activities were sewing,
> reading, music, writing, and using the
> computer. Dr. Goodman was not able to confirm
> the diagnosis of agoraphobia and opined that
> the claimant would be able to mentally handle
> simple work activity (exhibit 15F).
>
> ..........
>
> Consultative psychologist Dr. Goodman stated
> that the claimant should be able to
> intellectually follow simple oral
> instructions and carry out instructions under
> ordinary supervision. <u>Dr. Goodman reported
> that the claimant should be able to
> intellectually relate appropriately to
> coworkers and supervisors, meet quality
> standards and production norms, and sustain
> work with adequate attendance providing that
> she work in a low stress familiar situation</u>
> (exhibit B 15F). <u>Although not a treating
> source, Dr. Goodman's opinion is based upon
> medically acceptable diagnostic methods as
> well as his trained observations. It is not
> contradicted by the opinion of any other
> psychological source and is consistent with
> the claimant's daily activities. Therefore,
> it has been given substantial weight in
> showing that the claimant does not have a
> severe mental disorder preclusive of
> unskilled employment</u>.

(R. at 18, 25, emphasis added).

Thus, Dr. Goodman opined that plaintiff can work provided that "she work in a low stress familiar situation" (R. at 25). The ALJ stated that Dr. Goodman's opinion is based upon medically acceptable diagnostic methods as well as his trained observations, and that it is not contradicted by the opinions of other psychological sources and is consistent with the plaintiff's daily activities. The ALJ gave "substantial weight"

6

to his opinion that plaintiff does not have a severe mental disorder that precludes unskilled employment. The ALJ later stated that plaintiff is able to mentally perform unskilled work tasks (R. at 25). However, without any explanation, the ALJ did not include Dr. Goodman's opinion that plaintiff is limited to "work in a low stress familiar situation," or any other mental limitation, in plaintiff's RFC (R. at 20).[1]

According to SSR 96-8p:

> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20

---

[1] Defendant, in his brief, argues that "the ALJ determined that these activities [driving, shopping, managing a household, socializing and other activities] demonstrated a capability to handle stress such that a limitation to only low-stress work was not necessary" (Doc. 18 at 17). However, other than to cite Dr. Goodman's opinion limiting her to low stress work, as set forth above, the ALJ did not discuss this limitation at any other time in his decision, and never stated that he determined that her activities or the evidence demonstrated a capability to handle stress such that a limitation to low stress work was not necessary. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).  However, the ALJ never discussed why he did not include Dr. Goodman's opinion limiting plaintiff to low stress work in his RFC findings.

In the case of <u>Van Sickle v. Astrue</u>, 385 Fed. Appx. 739, 741 (9th Cir. June 30, 2010), the ALJ found that the opinions of Dr. Geary and Dr. Fuller were "highly probative."  Among the opinions expressed by the two medical sources, Dr. Fuller opined that the claimant could work "in a low stress setting."  Their opinions were uncontroverted by other sources, and were the sole medical opinion evidence regarding the claimant's mental limitations.  The court stated that the ALJ did not include the limitations of these two medical sources in his RFC, including a limitation to low stress work, nor did he explain why he rejected them, as he was required to do.  To the extent that the ALJ accepted the doctor's findings, the ALJ was required to include them in his RFC.  The court held that the ALJ erred by failing to include in his RFC the limitations identified by Dr. Geary and Dr. Fuller.

In the case of <u>Dissette v. Astrue</u>, 2010 WL 2925998 at *8 (N.D. Ohio, July 23, 2010), the ALJ stated that he was giving greater weight to the opinion of Dr. House, but failed to include in his RFC findings the opinion of Dr. House that plaintiff had a moderate limitation in the ability to withstand stress and

8

pressure, and offered no explanation for his failure to include this limitation. The court was unable to ascertain any basis in the ALJ's decision for crediting his opinion, but failing to include this limitation in plaintiff's RFC findings. Therefore, the case was remanded for further hearing. In a subsequent motion for attorneys' fees, the court stated that it was clear that the ALJ erred by adopting the opinions of Dr. House without explaining why he did not set forth a low stress requirement in the RFC. Dissette v. Astrue, 2010 WL 4537945 at *3 (N.D. Ohio, Nov. 2, 2010).

In Bair v. Astrue, 2009 WL 2382941 at *2-5 (D. Colo. July 31, 2009), the ALJ adopted Dr. Kahler's opinion as representative of the claimant's true mental RFC. Dr. Kahler stated that the claimant retained the capacity for "moderately complex, low stress work, with few social demands." However, without explanation, the ALJ, in his RFC findings, found that plaintiff had the RFC to perform light work that is not "extraordinarily high in stress." The court stated that the range of jobs available to plaintiff could be much narrower if limited only to "low stress" work as compared to work that is not "extraordinarily high in stress." The court, citing to SSR 96-8p, held that because the ALJ stated that she accepted Dr. Kahler's opinion as representative of plaintiff's true mental RFC, it was incumbent on the ALJ to, at a minimum, explain why

she did not include the limitation to low stress work in the RFC. The case was therefore remanded for reconsideration of plaintiff's RFC.

In the case before the court, the ALJ stated that the opinions of Dr. Goodman are based upon medically acceptable diagnostic methods as well as his trained observations, and the ALJ found that his opinions are not contradicted by the opinions of other psychological sources and are consistent with the plaintiff's daily activities. The ALJ gave "substantial weight" to Dr. Goodman's opinion in showing that plaintiff does not have a severe mental limitation preclusive of unskilled employment. However, despite the fact that the ALJ clearly gave substantial weight to the uncontradicted opinions of Dr. Goodman, the ALJ, without explanation, made RFC findings which did not include Dr. Goodman's opinion that plaintiff should be limited to work in a "low stress familiar situation." The ALJ clearly erred by failing to even acknowledge that he is rejecting this opinion by Dr. Goodman, and by failing to explain why he made RFC findings inconsistent with this opinion by Dr. Goodman. See Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1186-1187 (D. Kan. 2003). Therefore, this case shall be remanded in order for the ALJ to make new RFC findings that either include the limitation opined by Dr. Goodman that plaintiff work in a low stress familiar situation, or provide a

10

legally sufficient explanation for not including that limitation in his RFC findings.

**IV. Did the ALJ err by issuing a decision when plaintiff failed to appear at the hearing?**

On January 30, 2007, plaintiff requested a hearing before an ALJ (R. at 47). On March 25, 2008, a notice of hearing was sent to the plaintiff, indicating that a hearing was scheduled for April 23, 2008. The notice indicates that if plaintiff cannot come to the hearing at the time and place scheduled, plaintiff should call the office and mail in an enclosed acknowledgment form (R. at 48). On April 11, 2008 plaintiff signed and sent in the acknowledgment form stating that she wanted to appear at the hearing by phone (R. at 55). There is no indication in the record that plaintiff was informed prior to the hearing date on April 23, 2008 that she could not appear at the hearing by phone.

At the hearing, plaintiff did not appear, but was represented by her attorney. The ALJ indicated at the hearing that he would not allow plaintiff to appear by phone because he would not know if that is her talking or someone else (R. at 298). The ALJ informed plaintiff's counsel that the ALJ could either dismiss the case or the ALJ could adjudicate it on the written record (R. at 297). At another point, the ALJ stated that he could adjudicate it on the written record or plaintiff could withdraw her application for disability (R. at 298). Given

11

those choices, plaintiff's counsel informed the ALJ that he could adjudicate it on the record (R. at 300).

Plaintiff argues that the ALJ erred by failing to follow procedures set out in defendant's Hearing, Appeals and Litigation Law Manual (HALLEX) when he issued a decision on the merits without plaintiff's appearance.  Plaintiff cites to two provisions in HALLEX, and argues that these procedures were not followed in this case (Doc. 12 at 6-7).  However, the provisions of HALLEX do not have the force of law, are not binding on the defendant, and do not provide a basis for the court to rule.  HALLEX is enforceable only if it restates a statute, administrative regulation or ruling.  McCoy v. Barnhart, 309 F. Supp.2d 1281, 1284 (D. Kan. 2004).  On the other hand, disability hearings are not adversarial, and the ALJ is responsible for developing an adequate record.  Given this duty, it is quite sensible for an ALJ to offer to postpone a hearing if an essential witness does not appear to testify.  Id., 309 F. Supp.2d at 1285.

Section 205(b) of the Social Security Act, 42 U.S.C. § 405(b), and due process require that a claimant receive meaningful notice and an opportunity to be heard before his or her claim for disability benefits can be denied.  Stoner v. Secretary of HHS, 837 F.2d 759, 760-761 (6th Cir. 1988).  Although plaintiff's counsel did not object to proceeding without

his client being present at the hearing, the court is concerned that counsel's decision to participate at the hearing was the result of being given the choice by the ALJ of either participating and having a decision made on the written record, or having the case dismissed by the ALJ. Stoner, 837 F.2d at 761.

Because the provisions of HALLEX do not have the force of law, they do not provide a basis for the court to find that the ALJ erred by proceeding at the hearing without the plaintiff being present. However, the court is concerned with the fact that plaintiff did send in an acknowledgment of notice of the hearing, and asked to appear by phone; at no time before the hearing was plaintiff notified that he could not appear by phone, but must appear in person. Thus, plaintiff did not know until after the hearing that she would not be allowed to appear by phone, and that she would have no further opportunity to appear before the ALJ and present evidence or testify.

Because this case is being remanded in order to consider what weight to accord to the limitations set forth in Dr. Goodman's report, the ALJ should provide an opportunity for the plaintiff to appear at a hearing. The ALJ should inform the plaintiff that she must appear in person, and cannot appear by phone. The ALJ should comply with SSR 79-19, which establishes requirements for a valid waiver of an individual's right to

appear in person or through a representative, and present evidence or information, and testify at a hearing before the ALJ. SSR 79-19, 1979 WL 15541; Stoner, 837 F.2d at 761.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 15th day of December, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge